**No. 24-6434**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

ELLA RAMIREZ, individually and on behalf
of all others similarly situated,

*Plaintiff-Appellee*,

v.

TRUSPER, INC. d/b/a MUSELY,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of California
No. 5:24-cv-02012
Hon. Edward J. Davila

_____

**APPELLANT'S OPENING BRIEF**

_____

Sara Anderson Frey, Esquire
GORDON REES SCULLY
MANSUKHANI, LLP
1717 Arch Street, Suite 610
Philadelphia, PA 19103
(215) 717-4009
sfrey@grsm.com

Timothy K. Branson, Esquire
GORDON REES SCULLY
MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
(619) 230-7441
tbranson@grsm.com

*Attorneys for Appellant*
Trusper, Inc. d/b/a Musely

# DISCLOSURE STATEMENT

Defendant-Appellant Trusper, Inc. d/b/a Musely has no parent corporation and no publicly held corporation holds 10% or more of its stock.


Date: February 24, 2025

> GORDON REES SCULLY
> MANSUKHANI, LLP
>
>
> */s/ Sara Anderson Frey*
> Sara Anderson Frey
>
> *Attorneys for Appellant Trusper, Inc. d/b/a Musely*

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................. i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

ISSUES PRESENTED........................................................................2

STATUTORY AUTHORITIES ...............................................................3

STATEMENT OF THE CASE................................................................3

      A.    Background Regarding Musely and its Website...................................3

      B.    Enrollment Process and Participant Agreement.........................4

      C.    Ramirez's Interactions with the Musely Website ................................7

      D.    Procedural History...............................................................9

SUMMARY OF THE ARGUMENT .........................................................10

STANDARD OF REVIEW ..................................................................12

ARGUMENT ...............................................................................12

I.     THE FEDERAL ARBITRATION ACT FAVORS ARBITRATION
      AGREEMENTS ........................................................................12

II.    THE DISTRICT COURT ERRED IN DETERMINING THERE WAS NO
      VALID AND ENFORCEABLE AGREEMENT TO ARBITRATE............14

      A.    The Uncluttered, Clean Design of the Musely Website Provided
          Reasonably Conspicuous Notice of the Terms of the Participant
          Agreement. ...............................................................16

B.    The District Court Improperly Disregarded the Lengthy, Repeated, and Transactional Nature of the Parties' Relationship......................20

C.    This Court Shoulder Consider Whether Musely Demonstrated Ramirez's Assent...............................................................................21<u>1</u>

    1.    This Court Can Properly Consider Whether Ramirez Manifested Assent to the Participant Agreement. ...................21

    2.    Ramirez Unambiguously Manifested Her Assent ...................22

CONCLUSION.......................................................................................25

STATEMENT OF RELATED CASES ..................................................26

CERTIFICATE OF COMPLIANCE.....................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambler v. BT Americas Inc.*,
  964 F. Supp. 2d 1169 (N.D. Cal. 2013)...................................................12, 13, 14

*AT&T Tech., Inc. v. Commc'n Workers*,
  475 U.S. 643 (1986).................................................................................13

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2023) ................................................................14, 15, 16

*Blausey v. U.S. Trustee*,
  552 F.3d 1124 (9th Cir. 2009) ...........................................................................22

*Cavanaugh v. Fanatics, LLC*,
  738 F. Supp. 3d 1285 (E.D. Cal. 2024) ...........................................12, 14, 15, 16

*Chico v. Hilton Worldwide, Inc.*,
  No. CV 14-5570, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014).........................23

*Cox v. Ocean View Hotel Corp.*,
  533 F.3d 1114 (9th Cir. 2008) ........................................................................12

*Cristobal v. Siegel*,
  26 F.3d 1488 (9th Cir. 1994) ...........................................................................21

*Dean v. OKCoin USA, Inc.*,
  Case No. 24-cv-01331, 2024 WL 3522207 (N.D. Cal. July 23,
  2024) .................................................................................................................18

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..........................................................................................13

*Deleon v. Verizon Wireless, LLC*,
  143 Cal. Rptr. 3d 810 (Ct. App. 2012) .......................................................22, 23

*Ghazizadeh v. Coursera, Inc.*,
  737 F. Supp. 3d 911 (N.D. Cal. 2024)..........................................................16, 18

iv

*Gross v. Recabaren*,
253 Cal. Rptr. 820 (Ct. App. 1988) ...................................................24

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) ...............................................*passim*

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ...................................................12

*Lonberg v. City of Riverside*,
571 F.3d 846 (9th Cir. 2009) ...................................................22

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. Aug. 17, 2017) ...................................................19

*Nolan v. Heald Coll.*,
551 F.3d 1148 (9th Cir. 2009) ...................................................12

*O'Connor v. Uber Techs., Inc.*,
904 F. 3d 1087 (9th Cir. 2018) ...................................................12

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ...........................................14, 18, 22, 24

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ...................................................14

*Preston v. Ferrer*,
552 U.S. 346 (2008)...................................................12

*Quinn v. Robinson*,
783 F.2d 776 (9th Cir.1986) ...................................................21, 22

*Randas v. YMCA of Metropolitan Los Angeles*,
21 Cal. Rptr. 2d 245 (Ct. App. 1993) ...................................................23

*Sellers v. JustAnswer LLC*,
289 Cal. Rptr. 3d 1 (Ct. App. 2021) ...................................................15, 20

*Silva v. WhaleCo, Inc.*,
Case No. 24-cv-02890, 2024 WL 4487421 (N.D. Cal. Oct. 10,
2024) ...................................................24

*Singleton v. Wulff*,
    428 U.S. 106 (1976) .......................................................................................21

*Snow v. Nectar Brand, LLC*,
    Case No. 2:22-cv-07912, 2023 WL 2558544 (C.D. Cal. Mar. 2,
    2023) ...........................................................................................................13, 14

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...............................................................19

*Whalen v. Facebook, Inc.*,
    No. 20-cv-06361, 2022 WL 19934419 (N.D. Cal. Apr. 11, 2022) ...................24

*Wolsey, Ltd. v. Foodmaker, Inc.*,
    144 F.3d 1205 (9th Cir. 1998) ...........................................................................12

**Statutes**

9 U.S.C. § 1 .....................................................................................................................10

9 U.S.C. § 2 .....................................................................................................................12

9 U.S.C. § 16 .....................................................................................................................2

28 U.S.C. § 1332 ...............................................................................................................2

Cal. Civ. Code § 56.10 ......................................................................................................9

Cal. Pen. Code § 631 .........................................................................................................9

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................12

## INTRODUCTION

This appeal seeks to uphold Plaintiff-Appellee Ella Ramirez's ("Ramirez") agreement to arbitrate her claims against Defendant-Appellant Trusper, Inc. d/b/a Musely ("Musely"). Ramirez visited Musely's Website, www.musely.com (the "Website") on at least four occasions between 2022 and 2023. During her first visit, she created an account and was provided notice and access to Musely's Participant Agreement, which contains an agreement to arbitrate. She twice consented to the Participant Agreement during this initial visit.

In each of her subsequent visits, she again received notice and access to the Participant Agreement. During her fourth visit, Ramirez purchased prescription medication for treatment of dark brown spots on the skin. In addition to again receiving notice and access to the Participant Agreement, Ramirez also consented to Musely's Telehealth services, signaling a continuing, forward-looking relationship with Musely.

The district court refused to hold Ramirez to the terms she agreed to, finding that the Musely Website did not provide reasonably conspicuous notice of the arbitration agreement. This was in error. Under the Federal Arbitration Act, and relevant case law, this Court should reverse the district court's denial of the motion to compel arbitration and require Ramirez to pursue her claims in arbitration, as mandated by the terms to which she agreed. Alternatively, this Court should

1

reverse and remand for consideration of whether Ramirez manifested assent to the terms of the Participant Agreement.

## JURISDICTIONAL STATEMENT

This is an appeal from an October 11, 2024 order from the United States District Court for the Northern District of California denying Musely's Motion to Compel Arbitration. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332.

This Court has jurisdiction to hear this appeal under 9 U.S.C. § 16. Musely timely filed its Notice of Appeal on October 16, 2024. ER-180.

## STATUTORY AUTHORITIES

Pursuant to Ninth Circuit Rule 28-2.7, Musely has attached the entire text of 9 U.S.C. § 2 in the attached Addendum.

## ISSUES PRESENTED

Whether the district court erred in concluding that notice of the Participant Agreement's terms, including the agreement to arbitrate, on the Musely Website was not reasonably conspicuous?

Whether this Court should exercise its discretion and find that Ramirez manifested assent to the terms of the Participant Agreement, including an agreement to submit her claims to individual arbitration?

2

## STATEMENT OF THE CASE

### A.    Background Regarding Musely and its Website

Musely is a skincare company that connects people to board-certified dermatologists for prescription and non-prescription treatment for skin conditions through a nationwide telehealth service.  ER-111.  Musely offers oral and topical medications to customers throughout the United States by connecting them to doctors in their states of residence through the Musely platform, accessible at the Website and the Musely smartphone application.  ER-111.

Many of Musely's customers seek treatment for chronic skin conditions that they have already treated unsuccessfully, such as melasma, aging, hair loss, and rosacea.  ER-111.  Musely's treatments must be used consistently over time, and often on an ongoing basis, to achieve the desired results.  ER-111-112.  The time necessary to achieve results varies depending on the prescribed treatment and reported skin condition.  ER-112.  Musely informs its customers to expect that ongoing treatment will be needed for conditions such a dark spots or hair loss.  ER-112.

To support the consistency that is essential for successful treatment, Musely's telehealth platform is designed to allow customers to engage with Musely on an ongoing basis.  ER-112.  When a customer purchases a Musely prescription treatment, they receive a prescription valid for one year, as well as

ongoing access to their prescribing doctor through Musely's Message Center and automated check-ups through Musely's app. ER-112. Musely also offers a community forum where customers may post before and after photographs to show progress with treatments. ER-112.

Musely offers a 60-day result guarantee for products that treat certain conditions. ER-112. To obtain this guarantee, customers must participate in Musely's automated check-up program, called eNurse, that follows customers' skin conditions for a minimum of 60 days. ER-112. Customers participating in the eNurse program must use their treatment consistently for 60 days. ER-112. During this time, customers have the option of a free consultation with their Musely-affiliated doctor through Musely's Message Center. ER-112. After 60 days, they are entitled to receive a refund if they are not satisfied with their results. ER-112.

### B. Enrollment Process and Participant Agreement

Because Musely's service typically requires a doctor's prescription, customers must first enroll in Musely by creating a customer account and providing information relevant to finding a physician before making any purchase or even advancing to Musely's shopping cart. ER-113. The first step in the enrollment process begins when a customer is presented with a clear, uncluttered Telehealth Consent screen, labeled "Step 1 of 3." ER-113, ER-120. Customers are

4

prompted to "Enter your home state:" into a boxed field. ER-113, ER-121. Directly under the boxed field and directly above the pink "Next" button is a pink pre-checked box next the statement, "I agree to the terms of <u>Telehealth Consent</u>." ER-113, ER-121. The underlined portion of the "I agree" statement is a hyperlink that, if clicked, opens a pop-up titled "Consent to Telehealth Services." ER-113, ER-122. The pink "Next" button must be clicked before continuing. ER-113, ER-121.

The Consent to Telehealth Services pop-up contains just five sentences, the last two of which state, "For Musely's full Telehealth Terms and Conditions please visit the <u>terms page</u> or click on the link provided below. By consenting to Telehealth you are agreeing to our full terms and conditions." ER-113, ER-122. The underlined reference to the "<u>terms page</u>" is a hyperlink that opens Musely's Participant Agreement. ER-113, ER-122.

The Participant Agreement advises that "[b]y registering with Musely and using the Services, [customers] agree to be bound by all terms and conditions of [the] Agreement." ER-123. Section 7 of the Agreement is titled with the bolded heading "**Applicable Law**." ER-136. Section 7.1 contains the following arbitration provision:

> 7.1 Arbitration. Any Legal dispute or claim relating to or arising out of
> your use of the Site or Services (including any claim involving Musely
> or its affiliates, subsidiaries, employees, contractors, officers, directors,

5

telecommunication providers and content providers) (a "Dispute") will be resolved through binding arbitration in Santa Clara, CA under the Federal Arbitration Act and, to the extent not inconsistent with or preempted by the Federal Arbitration Act, the Arbitration Rules set forth in California Code of Civil Procedure Section 1280 et seq. The arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules conducted in Santa Clara County, California, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. You consent to jurisdiction of the state and federal courts of California for enforcement of this arbitration provision. You and Musely agree that such arbitration shall be conducted on an individual basis only, not a class, collective or representative basis, and both parties hereby waive any right to bring classwide, collective or representative claims before any arbitrator or in any forum. THE PARTIES UNDERSTAND THAT BY AGREEING TO ARBITRATE DISPUTES THEY ARE WAIVING ANY RIGHT THEY MIGHT OTHERWISE HAVE TO A JURY TRIAL. This arbitration provision is not intended to modify or limit substantive rights or the remedies available to the parties, including the right to seek interim relief, such as injunction or attachment, through judicial process, which shall not be deemed a waiver of the right to demand and obtain arbitration.

ER-136-137.

In the second step of the enrollment process, Musely provides a second opportunity to view the Participant Agreement, as part of opening the customer's Musely account. ER-113. In this step, the customer is presented with the "Create an Account" screen, "Step 2 of 3," and prompted to create an account to "communicate with your doctor using our secure system." ER-113, ER-139. The customer provides an email address, establishes a password, and confirms his or her legal name. ER-113, ER-139. The customer is presented with a clear, uncluttered statement that reads, "By signing up, you agree to Musely's <u>Privacy</u>

6

Policy and <u>Terms of Use</u>" before clicking on a gray button that says "Create Account." ER-113, ER-139. The underlined reference to the "<u>Terms of Use</u>" is a hyperlink to a table of contents where, once again, the customer can click on the Participant Agreement. ER-113-114, ER-139.

In the final step of the enrollment process, customers are presented with a "Doctor Visit Questionnaire" screen, "Step 3 of 3." ER-114, ER-140. Customers then provide basic information such as contact information and date of birth, as required to provide Musely's services. ER-114, ER-140.

## C. Ramirez's Interactions with the Musely Website

Ramirez enrolled in Musely's services repeatedly over the course of four visits to Musely's Website in 2022 and 2023. ER-115-117. During these visits, she received notice and access to the Participation Agreement on five separate occasions and consented to the Participation Agreement on each occasion. ER-117-118.

On Ramirez's first visit to the Website on July 8, 2022, she completed the enrollment process, including advancing through the Telehealth Consent screen and creating an account, thereby receiving notice and access to the Participant Agreement twice, and twice consenting to the Participant Agreement. ER-116. She returned to the Website the next day, on July 9, 2022 and again initiated the enrollment process. ER-115-116. Although she had already created an account,

7

she received further notice of and access to the Participant Agreement at the Telehealth Consent screen during her second visit and again provided her consent. ER-116.

In 2023, Ramirez visited the Musely Website two additional times. On April 16, 2023, she visited the Website and again received notice of and access to the Participant Agreement a fourth time at the Telehealth Consent screen and provided her consent, but did not make a purchase. ER-116. On June 6, 2023, Ramirez again visited the Website and again received notice of and access to the Participant Agreement and provided her consent. ER-116. It was on this June 6, 2023 visit that Ramirez purchased a prescription medication to treat dark brown spots on the skin. ER-116, ER-148.

Prior to making her purchase on June 6, 2023, Ramirez completed an online questionnaire "for the purpose of having a doctor write a prescription for the medication she purchased." ER-148. In order to access the questionnaire, or make a purchase, Ramirez had to create an account, which she did a year prior on her July 8, 2022 visit. ER-113-114. Additionally, to access the questionnaire, Ramirez had to provide her consent to the Telehealth Consent screen during her June 6, 2023 visit. ER-113-114.

Following Ramirez's June 6, 2023 purchase, Musely sent Ramirez an email the same day confirming the purchase and providing her with an order number.

8

ER-117, ER-145. Because the treatment selected by Ramirez required that she upload a picture to facilitate doctor review, Musely reminded her to "[p]lease upload your photos for the doctor to review the information." ER-117, ER-145. This email provided a button through which Ramirez could "Complete Online Doctor Visit." ER-117. Ramirez uploaded the requested photograph on July 1, 2023. ER-117, ER-146.

### D. Procedural History

On April 3, 2024, Ramirez filed suit in the United States District Court for the Northern District of California, individually and "on behalf of all U.S. residents who have accessed and used" the Website. ER-147-179. Ramirez, who has had an active Facebook account for several years, alleges that Musely assisted Meta[1] in allegedly intercepting her communications through the deployment of software code, known as the Facebook Pixel, on the Musely Website. ER-149. Ramirez claims that following her purchase on the Website, she began to receive targeted advertisements from Musely and other advertisements related to prescription skincare on Facebook. ER-149. Ramirez asserted claims under the California Invasion of Privacy Act (California Penal Code § 631), California Confidentiality of Medical Information Act (California Civil Code § 56.10), and the California Constitution. ER-169-174.

---

[1] Ramirez alleges that Facebook, Inc. changed its name to Meta Platforms, Inc. and refers to them collectively as "Meta." ER-148.

On May 24, 2024, Musely filed a Motion to Compel Individual Arbitration and Stay Litigation on grounds Ramirez agreed to resolve her claims through arbitration by consenting to the Participant Agreement. ER-92-109. In support of its motion, Musely submitted the Declaration of its Vice President of Finance and Operations, Steven Buchanan, which attached screenshots of the Website and provided information concerning Ramirez's consent to the Participant Agreement. ER-110-146. Ramirez did not submit her own declaration in opposition to the motion to compel. ER-60-91.

On October 11, 2024, the district court entered its order denying the Motion to Compel Arbitration. ER-5-18. The district court found that Musely failed to show the Participant Agreement was a valid and enforceable contract because the terms of the agreement were not reasonably conspicuous. ER-18. The district court did not reach the issue of whether Ramirez manifested assent to the terms of the agreement. ER-18.

Musely timely appealed on October 16, 2024. ER-180

## SUMMARY OF THE ARGUMENT

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), is clear: when parties agree to submit their disputes to arbitration, those disputes <u>must</u> be resolved in arbitration, not in court. This Court should reverse the district court's order denying Musely's motion to compel arbitration. The district court committed clear

error by analyzing each piece of Musely's evidence in isolation, rather than properly considering the full context of the transaction between Musely and Ramirez.

The notice on Musely's Website is more than sufficient to put a reasonably prudent user on inquiry notice of the applicable terms, including the arbitration agreement. Ramirez visited the Website on at least four occasions over the period of a year and was provided notice and access of the Participant Agreement on each occasion. She repeatedly consented to the Participant Agreement, including its arbitration provision. The district court erred by disregarding Ramirez's repetitive and lengthy use of the Website, which gave rise to a continuing and forward-looking relationship where she could reasonably expect to be governed by terms and conditions. Although the district court did not reach the issue of whether Ramirez assented to the terms of the Participant Agreement, this Court should exercise its discretion to consider this issue and find Ramirez manifested assent to arbitrate her claims.

For the reasons below, this Court should reverse the decision below and compel Ramirez to individually arbitrate her claims against Musely, as she agreed. Alternatively, this Court should reverse the district court's order and remand with instructions to consider the issue of assent.

11

## STANDARD OF REVIEW

This Court reviews the denial of a motion to compel arbitration *de novo*. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). That *de novo* review is "'with a healthy regard for the federal policy favoring arbitration.'" *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 830 (9th Cir. 2022) (quoting *O'Connor v. Uber Techs., Inc.*, 904 F. 3d 1087, 1093 (9th Cir. 2018)). District courts apply the summary judgment standard under Federal Rule of Civil Procedure 56 when considering a motion to compel arbitration. *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1291 (E.D. Cal. 2024). This Court reviews a district court's grant or denial of summary judgment *de novo*. *Nolan v. Heald College.*, 551 F.3d 1148, 1153 (9th Cir. 2009).

## ARGUMENT

## I. THE FEDERAL ARBITRATION ACT FAVORS ARBITRATION AGREEMENTS

The FAA "espouses a general policy favoring arbitration agreements and establishes that a written arbitration agreement is 'valid, irrevocable, and enforceable.'" *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1173 (N.D. Cal. 2013) (quoting 9 U.S.C. § 2); *see also Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (recognizing "national policy favoring arbitration when parties contract for that mode of dispute resolution") (citation omitted). There is a "strong presumption in favor of arbitrability." *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th

12

Cir. 1998); *Ambler*, 964 F. Supp. 2d at 1174 ("Arbitration agreements are generally presumed to be valid.").

In considering a motion to compel arbitration, the district "court is limited to determining (1) whether a valid arbitration agreement exists and, if so (2) whether the arbitration agreement encompasses the dispute at issue." *Id.* at 1173. "If these conditions are satisfied, the court is without discretion to deny the motion and *must* compel arbitration." *Id.* (emphasis added); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (noting FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration") (emphasis in original). "[A]ny doubts as to arbitrability must be resolved in favor of coverage" and a motion to compel arbitration "'should not be denied unless it may be said with positive assurance that the arbitration claim is not susceptible of an interpretation that covers the asserted dispute.'" *Ambler*, 964 F. Supp. 2d at 1173-74 (quoting *AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986)).

The party seeking to compel arbitration has the initial burden of demonstrating the existence of an arbitration agreement by a preponderance of the evidence. *Snow v. Nectar Brand, LLC*, Case No. 2:22-cv-07912, 2023 WL 2558544, at *1 (C.D. Cal. Mar. 2, 2023). The party opposing a motion to compel arbitration "bears the burden of proving any fact necessary to its defense by a

preponderance of the evidence." *Id.*; *Ambler*, 964 F. Supp. 2d at 1174 (party seeking to avoid arbitration "bears the burden of demonstrating the agreement is invalid").

## II. THE DISTRICT COURT ERRED IN DETERMINING THERE WAS NO VALID AND ENFORCEABLE AGREEMENT TO ARBITRATE

Federal courts apply state-law principles of contract formation in determining whether parties have agreed to arbitrate a particular dispute. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024). "To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Keebaugh v. Warner Bros. Entertaiment Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023)). Although assent may be manifested through conduct, "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id.* at 1014 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2023)).

These principles apply with equal force to contracts formed online. *Cavanaugh*, 738 F. Supp. 3d at 1294. Internet contracts "are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh*, 100

14

F.4th at 1014 (quoting *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 15 (Cal. 2021)). Scrollwrap agreements, which require a user to scroll through terms of use and click a button agreeing to same, and clickwrap agreements, which require a user check a box before proceeding, are at one end of the spectrum. *Cavanaugh*, 738 F. Supp. 3d at 1294. These types of agreements "are generally enforced because the user received notice of the terms put forth and asserted to those terms." *Id.* Browsewrap agreements, which provide a hyperlink and indicate users manifest assent by continuing to browse the website, are on the other end of the spectrum. *Id.* "Courts are more reluctant to enforce these agreements." *Id.*

"Somewhere in the middle are 'sign-in' wrap agreements," which "include a textual notice that a user will be bound by the terms of use [] by either creating or logging in to an account or by placing an order; however, the user is not required to review the terms and conditions or otherwise manifest their assent." *Id.* The parties agree that the Participant Agreement on the Website is a sign-in wrap agreement. ER-11.

Sign-in wrap agreements are enforceable "if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that ambiguously manifests his or her assent to those terms.'" *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 856). In denying Musely's motion to

15

compel arbitration, the district court held that Musely failed to demonstrate its Website provided reasonably conspicuous notice of the terms of the Participant Agreement. This was in error and requires reversal.

### A. The Uncluttered, Clean Design of the Musely Website Provided Reasonably Conspicuous Notice of the Terms of the Participant Agreement.

"To be conspicuous, notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 924 (N.D. Cal. 2024) (quoting *Berman*, 30 F.4th at 856). Courts look to a variety of factors including text size, text color compared to the background it appears against, location of the text and proximity to any box or button that must be clicked to continue use of the website, obviousness or any associated hyperlink, and whether the screen is cluttered or otherwise obscures the textual notice. *Cavanaugh*, 738 F. Supp. 3d at 1295.

Here, there can be no doubt that the visual aspects of Musely's notice of the Participant Agreement are reasonably conspicuous and sufficient to make it fully enforceable. The Telehealth Consent screen is uncluttered, crisp, and clean and presents the statement "I agree to the terms of "Telehealth Consent" next to a pink checkbox, directly between the box field Ramirez completed and the pink "Next" button which she was required to click to complete the first step of the enrollment

16

process and continue on to step two. ER-121. It is in the same size font as the text surrounding it and uses underlining to indicate the presence of a hyperlink. ER-121. The text is not hidden or obscured by graphics. The "Telehealth Consent" hyperlink opens a pop-up that, in an uncluttered screen, directs users to the "terms page" to access Musely's full Telehealth Terms and Conditions and advises users that by consenting to Telehealth, they "are agreeing to our full term and conditions." ER-122.

In the second step of the enrollment process, the "Create an Account" screen is similarly uncluttered, crisp, and clean and advises users that "[b]y signing up, you agree to Musely's Privacy Policy and Terms of Use." ER-139. This statement is presented directly between the box field and the gray "Create Account" button she was required to click to complete this step and move on to the third step. ER-139. The visual aspects of the screens encountered by Ramirez in steps one and two of the enrollment process were sufficient to establish inquiry notice.

In finding the terms on the Website were not reasonably conspicuous, the district court focused on the visual placement of hyperlinks and the multi-step process by which a user must engage in to access the Participant Agreement. ER-13-18. Specifically, the district court held that hyperlinks which are "merely underlined with no other distinguishing design or capitalization" were insufficient to put Ramirez on notice and that "the multi-step process an internet user must

17

endure to reach the "terms page" hyperlink further minimizes the chance that they will receive notice of the terms of the Participa[nt] Agreement." ER-15. This holding is belied by the relevant case law.

In *Ghazizadeh*, the court remarked that while the defendant *could have* used blue font, capital letters, or larger font to denote a hyperlink to terms of use, the fact that it did not was "not dispositive." 737 F. Supp. 3d at 928 (acknowledging "courts have enforced arbitration agreements where hyperlinks were conspicuous *even without blue font or capitalization*") (emphasis added). In *Keebaugh*, this Court found notice was reasonably conspicuous where a hyperlink was located "[d]irectly beneath the operative Play button" and advised that "continued use" constituted acceptance of the terms of service. 100 F.4th at 1020; *see also Oberstein*, 60 F.4th at 517 (notices "located directly on top of or below each action button" were reasonably conspicuous because they were "not buried on the bottom of the webpage or placed outside the action box"); *Dean v. OKCoin USA, Inc.*, Case No. 24-cv-01331, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024) (finding notice was reasonably conspicuous despite "lack of a contrasting font color, different font size, or use of capital letters"). Like the links found sufficient in those cases, the hyperlinks on the Musely Website appear on an uncluttered screen and are conspicuously located directly above the action boxes and, thus, provide reasonably conspicuous notice of Ramirez's consent to arbitration. ER-

18

121-122, ER-139.

Furthermore, there is no authority suggesting that linking to multiple agreements somehow invalidates a disclosure. To the contrary, the Second Circuit, *applying California law*, held it was reversible error to deny a motion to compel arbitration where the terms and conditions page contained multiple documents and the user had to click twice to reach the Terms of Service that contained a binding arbitration provision. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78-79 (2d Cir. Aug. 17, 2017) (reversing district court's denial of motion to compel arbitration, holding that website provided the user with "reasonably conspicuous notice" even though multiple clicks were required to review them, such that the user was held to have "unambiguously manifested his assent" to the terms of service as a matter of *California law*); *see also Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (compelling arbitration where the notice below the "Allow" button listed multiple hyperlinked agreements).

The Musely Website contains clear hyperlinks that directed Ramirez to the Participant Agreement on more than one occasion. Musely's notice was sufficient under the law because it identified the agreement, provided access to it, and made its contractual nature obvious. As such, notice was reasonably conspicuous and the district court erred in holding otherwise.

19

**B.    The District Court Improperly Disregarded the Lengthy, Repeated, and Transactional Nature of the Parties' Relationship.**

The district court gave short shrift to the fact that Ramirez visited the Musely Website on numerous occasions over a one-year period and completed the enrollment process on each occasion.  The district court also gave mere fleeting consideration to the fact that Ramirez ultimately purchased a product subject to the 60-day results guarantee and agreed—four times—to participate in the eNurse checkup program for 60 days.

In considering whether notice is reasonably conspicuous, this Court has recognized that it is "'critical'" that the "full context of the transaction" be considered.  *Keebaugh*, 100 F.4th at 1016 (quoting *Sellers*, 289 Cal. Rptr. 3d at 26).  California courts have observed that "not all internet users are alike." *Sellers*, 73 Cal. Rptr. 3d at 24.  Where transactions contemplate "continuing, forward-looking relationships," courts are inclined to find sign-in wrap agreements enforceable.  *Id.* at 26.  Indeed, the "overall trend has been to find sign-in wrap agreements enforceable based on the existence of essentially *any textual notice* that purports for inform consumers they agree to the terms by signing up for an account or otherwise continuing to use the website." *Id.* at 22 (emphasis added).

The district court failed to give full context to the transaction, which evidences a far more intertwined and deep ongoing relationship between the parties.  Ramirez's sustained, repeated, and prolific pattern of use and engagement

is enough to place her "on notice that [she] [was] agreeing to be bound by the" Participant Agreement. *Keebaugh*, 100 F.4th at 1021. The district court's failure to give due consideration to Ramirez's repeated use of the Website under the totality of the circumstances constituted reversible error.

### C. This Court Should Consider Whether Musely Demonstrated Ramirez's Assent.

Having found that Musely failed to show reasonably conspicuous notice of the Participant Agreement's terms, the district court declined to analyze whether Ramirez unambiguously manifested her assent of those terms. ER-18. This Court need not, and should not, however, remand for consideration of whether Ramirez unambiguously manifested assent to the Participant Agreement.

### 1. This Court Can Properly Consider Whether Ramirez Manifested Assent to the Participant Agreement.

As a general rule, "'a federal appellate court does not consider an issue not passed upon below.'" *Quinn v. Robinson,* 783 F.2d 776, 814 (9th Cir.1986) (quoting *Singleton v. Wulff,* 428 U.S. 106, 120 (1976)). This is not, however, a hard and fast rule. This Court has the "discretion to decide whether to address an issue that the district court did not reach if the question is a purely legal one and the record has been fully developed prior to appeal." *Id.*; *see also Cristobal v. Siegel*, 26 F.3d 1488, 1493 (9th Cir. 1994) ("[W]e have discretion to consider matters of law never considered prior to appeal."). Review should, be permitted

21

where the "issue is clear" and "injustice might otherwise result." *Quinn*, 783 F.2d at 814.

Here, whether Ramirez manifested assent to the Participant Agreement is a purely legal question. *Deleon v. Verizon Wireless, LLC,* 143 Cal. Rptr. 3d 810, 820-21 (Cal. 2012) ("whether certain or undisputed state of facts establishes a contract is a question of law for the court"). Moreover, the factual record was fully developed below and Ramirez will not suffer prejudice if this Court considers the issue of assent. She had full opportunity to address, and did address, the issue in the district court. *See Lonberg v. City of Riverside*, 571 F.3d 846, 849 (9th Cir. 2009) (considering legal argument raised by defendant for the first time to the district court after trial because the plaintiff had an opportunity to brief the issue and the district court had declined to find waiver and addressed the issue on the merits).

"[J]udicial efficiency will be best served if [this Court] decide[s] the issue now rather than remand it." *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009) and, thus, this Court should exercise its discretion and consider whether Ramirez unambiguously manifested her assent.

### 2. Ramirez Unambiguously Manifested Her Assent

The issue of "whether the user takes some action that unambiguously manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515. The

assent necessary to form a contract "'is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5570, 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014) (quoting *Deleon,* 143 Cal. Rptr. 3d at 820). Generally, "'one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms'" and "'may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.'" *Id.* (quoting *Randas v. YMCA of Metropolitan Los Angeles,* 21 Cal. Rptr. 2d 245, 248 (Cal. 1993)).

Here, the undisputed record demonstrates that Ramirez unambiguously assented to the terms of the Participant Agreement, including its arbitration terms. As discussed above, Ramirez completed the enrollment process during each of her four visits to the Website. ER-117-118. During each visit, she received notice of and access to the Participant Agreement not once, not twice, not three times, not four times, but on *five occasions* and on each of those five occasions, she consented to the Participant Agreement. ER-117-118. Ramirez was advised that by signing up for an account, she "agree[d] to Musely's Privacy Policy and Terms of Use." ER-139. By clicking the "Create Account" button, she indicated her assent. ER-139. This Court has endorsed a materially identical mechanism for

securing assent to terms and conditions. *See Oberstein*, 60 F.4th at 515-16 (approving webpages alerting users that by creating an account, they agreed to the terms of use).

California has a "strong public policy favoring arbitration over litigation as a speedy and relatively inexpensive means of dispute resolution which eases court congestion." *Gross v. Recabaren*, 253 Cal. Rptr. 820, 822 (Ct. App. 1988). Giving effect to Ramirez's undisputed and repeated consent to the terms of the Participant Agreement promotes this public policy goal. On the other hand, allowing Ramirez to "'get out of a contract by arguing that [she] did not recall making it" would render contract law "'meaningless.'" *Silva v. WhaleCo, Inc.*, Case No. 24-cv-02890, 2024 WL 4487421, at *5 (N.D. Cal. Oct. 10, 2024) (quoting *Whalen v. Facebook, Inc.*, NO. 20-cv-06361, 2022 WL 19934419, at *3 (N.D. Cal. Apr. 11, 2022)).

Because the developed record below conclusively shows Ramirez unambiguously manifested her assent to the terms of the Participant Agreement, including its arbitration provision, this Court should reverse the district court's order denying Musely's motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be reversed and this matter should proceed to arbitration. Alternatively, the district court's decision should be reversed and this matter remanded for consideration of whether Ramirez manifested assent.

Date: February 24, 2025

<div style="margin-left: 40%;">

**GORDON REES SCULLY MANSUKHANI, LLP**


*/s/ Sara Anderson Frey*
Sara Anderson Frey
Timothy K. Branson

*Attorneys for Appellant Trusper, Inc. d/b/a Musely*

</div>

25

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 24-6434

The undersigned attorney or self-represented party states the following:

[ X ]   I am unaware of any related cases currently pending in this court.

[  ]   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** */s/ Sara Anderson Frey*          **Date** February 24, 2025

26

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-6434

I am the attorney or self-represented party.

**This brief contains 5,452 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Sara Anderson Frey*    **Date** February 24, 2025